# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

SHARON P.[1],
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 2:23-cv-3018
Marbley, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

    Plaintiff Sharon P. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) finding her disability ceased on October 21, 2016, and she no longer qualified for disability insurance benefits (DIB). This matter is before the Court on plaintiff's Statement of Errors (Doc. 10), the Commissioner's response in opposition (Doc. 11), and plaintiff's reply memorandum (Doc. 12).

**I. Procedural Background**

    Plaintiff filed her application for DIB in April 2009, alleging disability since March 17, 2009. (Tr. 603). After a hearing before Administrative Law Judge (ALJ) Patricia Yonushonis, plaintiff's application was granted with an onset date of March 17, 2009, due to degenerative disc disease of the lumbosacral spine, chronic pain syndrome (abdominal and pelvic), obesity, post-traumatic stress disorder, panic disorder, and major depressive disorder with psychotic

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

features. (Tr. 425-29). The Commissioner conducted a continuing disability review and determined that plaintiff's disability ceased on October 21, 2016. (Tr. 430-53). This determination was upheld upon reconsideration by a state agency Disability Hearing Officer. (Tr. 472-94). Plaintiff, who was unrepresented, was granted a *de novo* hearing before ALJ Valerie A. Bawolek on November 6, 2018. (Tr. 387-410). Plaintiff, two medical experts, and a vocational expert (VE) appeared and testified at the ALJ hearing. On October 25, 2019, the ALJ issued a decision finding that plaintiff's disability ended as of October 21, 2016, and she has not become disabled again since that date. (Tr. 29-44). Plaintiff's request for review by the Appeals Council was denied on September 21, 2020, making the decision of the ALJ the final administrative decision of the Commissioner. (Tr. 14-20).

Plaintiff filed an appeal with this Court seeking judicial review of the Commissioner's decision. *See Sharon P. v. Commissioner of Social Security*, No. 2:20-cv-6031 (S.D. Ohio 2020). Upon a Joint Motion for Remand, the Court remanded the matter to the Commissioner for further administrative proceedings. (Tr. 1287-91). Following remand, ALJ Bawolek held a second hearing on June 12, 2023, at which plaintiff, now represented by counsel, appeared and testified. (Tr. 1184-1221). Two medical experts and a VE also testified. The ALJ issued an unfavorable decision on July 12, 2023, finding that plaintiff's disability ended as of October 21, 2016, and she has not become disabled again since that date. (Tr. 1222-52). Plaintiff did not request review by the Appeals Council, opting to directly file suit with this Court.

## II. Analysis

### A. Legal Framework for Comparison Point Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

When, as here, a recipient of disability benefits challenges the cessation of benefits, the central issue is whether the recipient's medical impairments have improved to the point where she is able to perform substantial gainful activity. 42 U.S.C. § 423(f)(1); *Kennedy v. Astrue,* 247 F. App'x 761, 764 (6th Cir. 2007). Whether an individual's entitlement to benefits continues depends on whether "there has been any medical improvement in [the individual's] impairment(s) and, if so, whether this medical improvement is related to [the individual's] ability to work." 20 C.F.R. § 404.1594(a).

The cessation evaluation process involves two parts. *See Kennedy,* 247 F. App'x 764-65. The first part of the process focuses on medical improvement. *Id.* at 764. The implementing regulations define "medical improvement" as "any decrease in the medical severity of [the individual's] impairment(s) which was present at the time of the most recent favorable medical decision that [the individual was] disabled or continued to be disabled." *Id.* at 764-65 (citing 20 C.F.R. § 404.1594(b)(1)). "A determination that there has been a decrease in

3

medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the individual's] impairment(s). . . . 20 C.F.R. § 404.1594(b)(1)(i). If there has been a decrease in the severity of the impairments since the favorable decision, the medical improvement is related to the individual's ability to work only if there has been a corresponding 'increase in [the claimant's] functional capacity to do basic work activities. . . .'" *Kennedy*, 247 F. App'x at 765 (quoting 20 C.F.R. § 404.1594(b)(3)). *See also Nierzwickv. Comm'r of Social Security*, 7 F. App'x 358, 361 (6th Cir. 2001).

Medical improvement is "determined by a comparison of prior and current medical evidence which must show that there have been changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s)." 20 C.F.R. § 404.1594(c)(1). Under Sixth Circuit law, the date of the most recent ALJ hearing, not the cessation of benefits date, is the relevant point of comparison for determining medical improvement subsequent to the initial award. *Difford v. Sec'y of Health & Hum. Servs.,* 910 F.2d 1316, 1320 (6th Cir. 1990). That is, the ALJ must consider the plaintiff's condition at the time of the ALJ hearing and if the evidence shows she was disabled as of that date, her benefits should continue even if she was not disabled as of the cessation date. *McNabb v. Barnhart,* 340 F.3d 943, 944 (9th Cir. 2003) (citing *Difford,* 910 F.3d at 1319-20).

The second part of the cessation analysis focuses on whether the individual has the ability to engage in substantial gainful activity. *Kennedy*, 247 F. App'x at 765. The implementing regulations for this part of the evaluation incorporate many of the standards set forth in the regulations that govern initial disability determinations. *Id*. (citing 20 C.F.R. §§ 404.1594(b)(5)

and (f)(7)). The difference is that "the ultimate burden of proof lies with the Commissioner in termination proceedings." *Id.* (citing 20 C.F.R. §§ 404.1594(b)(5) and (f)(7); *Griego v. Sullivan*, 940 F.2d 942, 944 (5th Cir. 1991)). An increase in the claimant's functional capacity will lead to a cessation of benefits only if, as a result, the claimant can perform her past work or other work that exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1594(f)(7), (8).

In deciding whether a recipient's entitlement to disability benefits has ended, the Commissioner uses the eight-step sequential evaluation process outlined in 20 C.F.R. § 404.1594(f)(1)-(8). *Kennedy*, 247 F. App'x at 764. The steps are:

> (1) Are you engaging in substantial gainful activity? If you are . . ., we will find disability to have ended . . . .
>
> (2) If you are not, do you have an impairment or combination of impairments which meets or equals the severity of an impairment listed in appendix 1 of this subpart? If you do, your disability will be found to continue.
>
> (3) If you do not, has there been medical improvement as defined in paragraph (b)(1) of this section? . . .
>
> (4) If there has been medical improvement, we must determine whether it is related to your ability to do work in accordance with paragraphs (b)(1) through (4) of this section. . . .
>
> (5) If we found at step (3) that there has been no medical improvement or if we found at step (4) that the medical improvement is not related to your ability to work, we consider whether any of the exceptions in paragraphs (d) and (e) of this section apply. . . .
>
> (6) If medical improvement is shown to be related to your ability to do work or if one of the first group of exceptions to medical improvement applies, we will determine whether all your current impairments in combination are severe. . . .

> (7) If your impairment(s) is severe, . . . we will assess your residual functional capacity based on all your current impairments and consider whether you can still do work you have done in the past. If you can do such work, disability will be found to have ended.
>
> (8) If you are not able to do work you have done in the past, we will consider whether you can do other work given the residual functional capacity assessment. . . . If you can, we will find that your disability has ended. If you cannot, we will find that your disability continues.

20 C.F.R. § 404.1594(f).

There is no presumption of continuing disability. *Kennedy,* 247 F. App'x at 764 (citing *Cutlip v. Sec'y of Health and Hum. Servs.,* 25 F.3d 284, 286-287 n.1 (6th Cir. 1994)). Instead, the Commissioner applies the above procedures to determine whether plaintiff's disability has ended and if she is now able to work. *Id.*

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The most recent favorable medical decision finding that the [plaintiff] was disabled is the decision dated June 6, 2011. This is known as the "comparison point decision" or CPD.
>
> 2. At the time of the CPD, the [plaintiff] had the following medically determinable impairments: lumbar degenerative disc disease; chronic pain syndrome; obesity; posttraumatic stress disorder (PTSD); and major depressive disorder (MDD). These impairments were found to result in a residual functional capacity rendering the [plaintiff] unable to work an eight-hour workday or 40-hour workweek on a consistent basis due to pain.
>
> 3. Through the date of this decision, the [plaintiff] has not engaged in substantial gainful activity (20 CFR 404.1594(f)(1)).
>
> 4. The medical evidence establishes that, since October 21, 2016, the [plaintiff] has had the following medically determinable impairments: asthma; osteoarthritis;

tendinopathy of the shoulders; degenerative disc disease of the lumbar, thoracic, and cervical spines; chronic heart disease; unspecified anxiety disorder[;] unspecified depressive disorder; posttraumatic stress disorder (PTSD); and borderline personality disorder.  These are the [plaintiff's] current impairments.

5. Since October 21, 2016, the [plaintiff] has not had an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

6. Medical improvement occurred on October 21, 2016 (20 CFR 404.1594(b)(1)).

7.  Since October 21, 2016, the impairments present at the time of the CPD decreased in medical severity to the point where the [plaintiff] has had the following residual functional capacity:  She can do a job that consists of simple, repetitive tasks, with no contact with the public, and with occasional contact with coworkers or supervisors.  She can work alone with minimal supervision.  She can work in an environment with minimal changes in workplace responsibility and no strict production quotas or fast paced work.

8.  The [plaintiff's] medical improvement is related to the ability to work because it resulted in an increase in the [plaintiff's] residual functional capacity (20 CFR 404.1594(c)(3)(ii)).

9. Since October 21, 2016, the [plaintiff] has continued to have a severe impairment or combination of impairments (20 CFR 404.1594(f)(6)).

10.  Based on the impairments present since October 21, 2016, the [plaintiff] has had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the [plaintiff] can lift and carry 20 pounds occasionally and 10 pounds frequently, can sit for six hours, and can stand and/or walk for four hours in an eight-hour workday. She can occasionally climb ramps and stairs, occasionally balance, occasionally stoop, occasionally kneel, occasionally crouch, and occasionally crawl.  She can never climb ladders, ropes, and scaffolds.  She can occasionally operate foot controls bilaterally.  She can occasionally reach overhead and can frequently reach in other directions bilaterally.  Environmentally, she can work in environments that do not require concentrated exposure to pulmonary irritants, temperature extremes, extreme vibration, unprotected heights, and hazards.  She can do a job that consists of simple, repetitive tasks, with no contact with the public, with occasional contact with coworkers or supervisors.  She can work alone with minimal supervision.  She can work in an environment with minimal changes in workplace responsibility and no strict production quotas or fast paced work.

11. The [plaintiff] has no past relevant work (20 CFR 404.1565).

12. On October 21, 2016, the date of cessation, the [plaintiff] was a younger individual age 18-49. Thereafter, on January [xx], 2018, the [plaintiff] attained age 50 and was an individual closely approaching advanced age. Thereafter, on January [xx], 2023, the [plaintiff] attained age 55 and was closely approaching advanced age (20 CFR 404.1563).

13. The [plaintiff] has at least a high-school education (20 CFR 404.1564).

14. Transferability of job skills is not an issue because the [plaintiff] does not have past relevant work (20 CFR 404.1568).

15. From October 21, 2016, considering the [plaintiff's] age, education, work experience, and residual functional capacity based on the impairments present since October 21, 2016, the [plaintiff] has been able to perform a significant number of jobs in the national economy until her date last insured (20 CFR 404.1560(c) and 404.1566).[2]

16. The [plaintiff's] disability ended on October 21, 2016, and the [plaintiff] has not become disabled again since that date (20 CFR 404.1594(f)(8)).

(Tr. 1227-42).

**C. Judicial Standard of Review**

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

---

[2]The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative unskilled occupations such as document preparer (15,000 jobs in the national economy at the sedentary exertional level, prior to plaintiff's 50th birthday), photocopy machine operator (6,000 jobs in the national economy at the light exertional level, prior to plaintiff's 50th birthday); and folding machine operator (4,000 jobs in the national economy at the light exertional level, prior to plaintiff's 50th birthday). (Tr. 1214-15, 1240-42).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D.  Specific Errors**

In her sole assignment of error, plaintiff alleges the ALJ failed to adequately account for plaintiff's need for no more than superficial interaction with others resulting in an inaccurate residual functional capacity. (Doc. 10 at PAGEID 2562-66). In excluding this limitation, the ALJ found the limitation was inconsistent with the record because plaintiff was able to interact

with her medical providers, and plaintiff displayed multiple unremarkable psychological findings such as normal mood and normal affect during examinations. (Tr. 1237).

The Commissioner acknowledges that certain medical sources in the record, including the state agency reviewing psychologists and the medical expert at the hearing, opined that plaintiff was limited to "superficial" interaction with others. (Doc. 11 at PAGEID 2574) (citing Tr. 1236-39). The Commissioner argues, however, that the ALJ adequately explained why she did not include this limitation in assessing plaintiff's RFC, and the omission of this limitation was supported by the "collective record." (*Id.*).

**1. Residual Functional Capacity**

A claimant's RFC is an assessment of "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). A claimant's RFC assessment must be based on all the relevant evidence in her case file. (*Id.*). The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)-(5).

The ALJ alone is responsible for determining a plaintiff's residual functional capacity. *See* 20 C.F.R. § 404.1546(c). While medical source opinions are considered, the final responsibility for deciding the RFC is reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d)[3]; *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) ("The Social Security Act instructs that the ALJ—not a physician—ultimately determines a claimant's

---

[3] The ALJ here applied the pre-2017 regulations in considering the medical opinion evidence as plaintiff's application was filed prior to the regulatory changes in 2017.

RFC."). *See also Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) (stating that the responsibility for determining a claimant's RFC rests with the ALJ, not a physician).

In this case, the ALJ found plaintiff had the RFC for simple, repetitive tasks with no contact with the public and occasional contact with coworkers and supervisors. (Tr. 1236). The ALJ further found plaintiff can work alone with minimal supervision in an environment with minimal changes, no strict production quotas, and no fast paced work. (*Id.*). The ALJ declined to include a limitation for superficial interaction with others.

### 2. The ALJ's assessment of the opinion of Gary Bennett, Ph.D., is not supported by substantial evidence.

Gary Bennett, Ph.D., is a psychological expert who was hired by the Social Security Administration to review plaintiff's mental health records. He testified at the prior hearing on November 6, 2018 (Tr. 400-05) and at the June 12, 2023 hearing (Tr. 1204-1212); responded to a medical interrogatory; and reviewed the collective record. (Tr. 1204-1212). At the June 12, 2023 hearing, the ALJ asked Dr. Bennett for his final opinion on plaintiff's workplace limitations. Dr. Bennett testified:

> I think the biggest limitation is going to be is she going to be able to show up consistently and finish a normal workday without interruptions from symptoms. Besides that, I would say simple, repetitive tasks. I would say no contact with the public. Occasional with coworkers and supervisors.
>
> You know, ideally she'd be in a setting where she is working by herself with minimal supervision, so minimal changes in her workplace requirements. So say at the start of the day the supervisor would say, here's what we want you to do today. And that would be her responsibility for that day. I would say no strict production quotas or fast pace work.

(Tr. 1210-11). Dr. Bennett testified that he agreed with the State Agency reviewing doctors' opinions that plaintiff should be limited to no more than superficial interactions with others. (Tr. 1212).

In her RFC analysis, the ALJ afforded "some" weight to the opinions of Dr. Bennett. (Tr. 1237). The ALJ adopted Dr. Bennett's opinions that plaintiff would be limited to simple repetitive tasks with no contact with the public and occasional contact with coworkers and supervisors; she can work in an environment with minimal changes in the workplace; and she could have no strict production quotas or fast paced work. (Tr. 1231). The ALJ did not adopt Dr. Bennett's limitation to only superficial interactions with others. (Tr. 1237). The ALJ stated:

> Dr. Bennett's limitation to superficial interaction is inconsistent with the claimant's ability to interact with medical providers throughout the record as well as her performance during consultative examination (e.g., B3F). The record reflects multiple unremarkable psychological findings such as normal moods [sic] and normal affects [sic] seen during examinations (e.g., B14F; B22F; B25F).

(Tr. 1237).

The ALJ and Dr. Bennett, the medical expert who testified at the hearing, both reviewed the exact same evidence. This includes the records cited by the ALJ purportedly showing plaintiff's "ability to interact with her medical providers," including the psychological consultative examiner. (Tr. 1237). Both also reviewed the 334 pages of plaintiff's medical records from the Muskingum Valley Health Center cited by the ALJ, which purportedly reflected "multiple unremarkable psychological findings such as normal moods [sic] and normal affects [sic] seen during examination." (Tr. 1237) (citing B14F, B22F, B25F; Tr. 1001-1132, Tr. 1720-1748, Tr. 1796-1968). Dr. Bennett testified that his review of the Muskingum Valley Health

12

records went back to 2012 (Tr. 1206) and showed the waxing and waning of plaintiff's symptoms over time, where sometimes she was doing better and other times where she was not. (Tr. 1211). Dr. Bennett explained:

> [T]here's sort of a long history of mood issues, anxiety issues, relationship problems, compliance issues. Either she doesn't take medication as prescribed or according to the records at times she's just, she hasn't asked about that. She said she was taking medication and later on said no, like I wasn't actually taking it. So compliance has been an issue for probably most of the time period in question. The diagnoses from Moskeekum [sic] Valley include depression, anxiety. The more recent diagnosis I saw generalized anxiety with panic attacks. And then borderline personality disorder. And, Judge, there looks like there's a history of abuse and violence, which is common when you see a diagnosis of borderline personality disorder and, you know, honestly a lot of the symptoms I see throughout the record are very consistent with that diagnosis, just instability, mood lability, relationship issues. You know, we see all of those kinds of things with someone who has borderline personality disorder. So, Judge, in terms of -- it does look like she's been in more of a therapy treatment for the last couple of years. That is usually the best way to treat borderline personality disorder, although it, you know, requires a very specific kind of therapy to be effective. And I didn't see that she is actually getting that kind of treatment, so. In terms of severe impairments, Judge, I'd say borderline personality disorder. I would say an unspecified depressive disorder. And then I would say generalized anxiety disorder and there is an element of that that includes panic attacks although, you know, they seem fairly infrequent according to [plaintiff's] testimony. But those are what's severe to me, Judge. *Would they be any less severe if she was more compliant with treatment? It's hard to say. Again, you know, the thing with the borderline personality condition is medication doesn't really fix that.* It can help ameliorate some of the symptoms but again lasting improvement requires a very specific kind of treatment, which I don't believe she's had the opportunity to get.

(Tr. 1206-07) (emphasis added).

While the ALJ is not required to defer to or incorporate every limitation from a Social Security medical expert or state agency consultant's opinion in formulating an RFC, the ALJ "must explain why the opinion was not adopted." *Kinney v. Comm'r of Soc. Sec.*, No. 23-3889, 2024 WL 2273365, at *3 (6th Cir. May 20, 2024) (unpublished) (citing *Reeves v. Comm'r of*

13

*Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015); Social Security Ruling 96-8p). The ALJ's decision must say enough "to allow the [] court to trace the path of h[er] reasoning." *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011) (quoting *Diaz v. Chater,* 55 F.3d 300, 307 (7th Cir. 1995)). Here, the ALJ's decision lacks a cogent explanation as to why she assessed plaintiff was less limited than Dr. Bennett opined based on his review of the exact same evidence. The ALJ cites to "multiple unremarkable psychological findings" such as normal mood or affect in the Muskingum Valley Health Center records, but this appears to be consistent with Dr. Bennett's testimony that plaintiff's mental health symptoms waxed and waned over time, strongly suggesting Dr. Bennett was fully aware of these fluctuations when he gave his opinion on plaintiff's functioning. Also puzzling is the ALJ's adoption of every limitation to which Dr. Bennett opined with the exception of the limitation to superficial contact with others. The ALJ fails to explain how some "unremarkable psychological findings" in the Muskingum Valley Health records impact the quality of plaintiff's interaction with others. While the Court recognizes that "the ALJ is charged with the responsibility of determining the RFC based on her evaluation of the medical and non-medical evidence," *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (emphasis added), common sense dictates that when a Social Security medical expert and the ALJ rely on the very same mental health evidence to reach functionally disparate findings, the ALJ is impermissibly supplanting the role for which the mental health professional was hired by Social Security. The Court is not saying that an ALJ may never reject the findings of a medical expert called to testify at an ALJ hearing. But the ALJ must cite to substantial medical or non-medical evidence that allows the Court to assess the

14

reasonableness of that decision. Dr. Bennett's opinion limiting plaintiff to only superficial contact with others is supported by State Agency medical consultant Dr. Edwards, who also opined that plaintiff would be so limited. The Court is simply unable to discern the evidentiary basis for the ALJ's contrary opinion where both Dr. Bennett and the ALJ reviewed and relied on the same mental health evidence. Without pointing to some other evidence that Dr. Bennett did not consider or articulating why Dr. Bennett's assessment of this evidence was unwarranted, the Court cannot conclude the ALJ's decision is supported by substantial evidence.

Moreover, the ALJ failed to explain how plaintiff's ability to interact with her medical providers undermines Dr. Bennett's opinion that plaintiff was limited to superficial interactions with others. First, the ALJ did not identify the specific interactions plaintiff had with her medical providers to enable the Court to trace the path of the ALJ's reasoning. Second, courts have "cautioned against the use of a claimant's interactions with healthcare providers when assessing the capability to interact appropriately with coworkers and supervisors." *Dorsey v. Berryhill*, No. 3:18-cv-103, 2019 WL 1140178, at *5 (E.D. Tenn. Mar. 12, 2019) (citing *Daugherty v. Comm'r of Soc. Sec.*, No. 1:16-cv-898, 2017 WL 3987867, at *8 (S.D. Ohio July 20, 2017) (finding error in an ALJ's failure to include a specific limitation from examining consultant's opinion, as "long term familial relationships that predate Plaintiff's alleged disability, or relationships with her medical providers, are not equivalent to the type of social interactions that Plaintiff would encounter in the workplace"), *report and recommendation adopted*, 2017 WL 3965326 (S.D. Ohio Sept. 8, 2017); *Castrovianci v. Comm'r of Soc. Sec.*, No. 2:17-cv-179, 2018 WL 4100956, at *10 (M.D. Fla. Aug. 2, 2018) ("The ALJ also cited

15

Plaintiff's interactions with his medical providers in discounting greater than moderate limitations, as detailed above. . . . This suggests the opposite conclusion; Plaintiff may have only had social difficulties in the workplace."), *report and recommendation adopted*, 2018 WL 5084661 (M.D. Fla. Aug. 28, 2018). The undersigned is likewise unable to discern from the ALJ's decision how plaintiff's ability to interact with her medical providers is on par with interacting with coworkers and supervisors in a work setting on a sustained basis. *Cf. Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013) ("But the ALJ does not contend, and the record does not suggest, that Gayheart could do any of these activities on *a sustained basis,* which is how the functional limitations of mental impairments are to be assessed.) (citing 20 C.F.R. § 404.1520a(c)(2); 20 C.F.R. Part 404, Subpart P, Appendix 1, at 12.00) ("Social functioning refers to your capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals."). The ALJ's reliance on plaintiff's ability to interact with her medical providers to discount Dr. Bennett's opinion is not supported by substantial evidence.

### III. CONCLUSION

The ALJ's decision rejecting Dr. Bennett's opinion that plaintiff was limited to superficial interactions with others is not supported by substantial evidence. Accordingly, plaintiff's statement of error should be sustained, and the ALJ's decision should be reversed.

In determining whether this matter should be reversed outright for an award of benefits or remanded for further proceedings, the undersigned notes that all essential factual issues have not been resolved in this matter. *Faucher v. Sec'y of Health and Hum. Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). As discussed above, the ALJ's decision is such that the undersigned is unable to

"trace the path" of her reasons for discounting Dr. Bennett's opinion. *Stacey,* 451 F. App'x at 519. Therefore, this matter should be reversed and remanded for further proceedings with instructions to the ALJ to reevaluate Dr. Bennett's opinion in accordance with this decision; to reassess plaintiff's RFC; and for further medical and vocational development as warranted.

## IT IS THEREFORE RECOMMENDED THAT:

1. Plaintiff's Statement of Errors (Doc. 10) be **SUSTAINED**.

2. This matter be reversed and remanded for further proceedings.

Date: 7/30/2024

Karen L. Litkovitz
Chief United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| SHARON P.,<br>  Plaintiff, | Case No. 2:23-cv-3018<br>Marbley, J.<br>Litkovitz, M.J. |
| vs. | |
| COMMISSIONER OF<br>SOCIAL SECURITY,<br>  Defendant. | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).